## CHARLES B. SAWYER *vs.* WILLIAM WISWELL, JR.

If one has been induced by fraud to give a note, and before its maturity and before discovering the fraud he, at the request of an innocent indorsee for value, has given in substitution for it a new note payable to the original payee, he may set up the original fraud in defence to an action by the payee upon the note. Nor will the defendant be precluded from this defence by proof that before the maturity of the original note, and before discovering the fraud, he accepted from the plaintiff a conveyance of property which was made on condition that he should pay all obligations given by him to the plaintiff.

CONTRACT upon a promissory note for $1000, signed by the defendant, dated April 18th 1860, and payable to the plaintiff or order in nine months from date.

At the trial in the superior court, before *Allen*, C. J., the signature was admitted, and the defence was that the note was obtained fraudulently, and was without consideration. The following facts were proved: On the 18th of April 1860, the plaintiff conveyed to the defendant an interest under certain

patents for heating and ventilating furnaces, stoves, ranges and grates, in certain states, in consideration of which the defendant executed to the plaintiff notes for $10,000, one note being for $3000 payable in three months, another for $3500 payable in nine months, and a third for $3500 payable in fourteen months. At the same time the parties entered into a partnership for manufacturing and selling the patented articles, by the terms of which the defendant was to pay to the plaintiff an additional sum out of the profits of the firm.

On the 25th of July 1860 the defendant and William W. Northrop (who had become interested in the firm) entered into an agreement with the plaintiff, reciting that the plaintiff " has this day agreed to sell out to said Wiswell and Northrop all his interest in the said patents, . . . . upon condition that said Wiswell and Northrop will well and truly settle and pay all obligations that were given by them, either as the firm of Wiswell, Northrop & Co., or individually, to said Sawyer and others," and do certain other things therein specified, and providing that " in consideration of the premises the said Wiswell and Northrop hereby indemnify and hold said Sawyer harmless of all liability on account of debts, contracts or obligations incurred in the management of the business aforesaid, and fully and completely release all their interest in the patent rights " in certain specified states.

The note for $3500 payable in nine months was before its maturity indorsed by the plaintiff to F. A. Haskell, for a valuable consideration. About the 1st of October 1860, an arrangement was made between the plaintiff and Haskell, by which the plaintiff agreed to transfer to Haskell certain interests in the same patents, and to take therefor the defendant's note for $1000, which Haskell agreed to procure. Accordingly, by request of Haskell and with the plaintiff's knowledge, the defendant gave as a substitute for said note of $3500 two notes, one for $2500, which has been paid, and the note in suit, which was dated back to April 18th 1860.

The plaintiff contended that, even if the original note of $3500 was invalid in its inception, by reason of fraud, yet as it

passed before its maturity into the hands of a *bona fide* holder, and as the note in suit, given in part substitution therefor, was negotiated to the plaintiff upon a new and valuable consideration, the action might be maintained; and that the last sale and transaction constituted a sufficient consideration to support the note in suit, and that the alleged frauds of the former transaction could not be used to impeach it. The chief justice declined so to rule, and instructed the jury that the fact that the note had, under the circumstances of the case, passed through the hands of Haskell, would not confer upon it any additional validity in the plaintiff's hands; that, several months having elapsed since the first transaction, and a new bargain having been made and a new note given, the fraud would be purged, if the defendant knew that there was fraud in the original contract; that if the defendant affirmed the note in July or October 1860 with knowledge of the facts, he could not now set up that it was obtained by fraud; but if the last agreement was made in ignorance of fraud in the first transaction, such fraud would not be purged by the second transaction, so far as to render the note valid on its return into the hands of the original perpetrator of the fraud.

The jury returned a verdict for the defendant, and the plaintiff alleged exceptions.

*P. E. Aldrich & C. H. B. Snow*, (*P. C. Bacon* with them,) for the plaintiff. The indorsee for value had the right of unrestricted negotiation of the note, and of passing an unimpeachable title to it. Story on Notes, § 191, and cases cited. 1 Parsons on Notes, 261, and cases cited. *Hagthorp* v. *Hook*, 1 Gill & J. (Md.) 270. The note may be regarded in the light of a new note given for a valuable consideration on the 25th of July. The transaction of that date included many subjects, and a new party. If this defence is maintained, the effect will be to release Northrop also from his contract, and thus injustice would be done. There has been no attempt to rescind the contract of July 25th, and restore the plaintiff to his former condition.

*F. H. Dewey*, for the defendant, cited *Hill* v. *Buckminster* 5 Pick. 391; *Copp* v. *Sawyer*, 6 N. H. 386.

BIGELOW, C. J. We can see no valid reason why the defend-
ant should not be allowed to recoup in this action the damages
which he has sustained by the false and fraudulent representa-
tions of the plaintiff.

In the first place, the note declared on is not held by the plain-
tiff as indorsee, nor does he trace his title to it in this action
through a negotiation of it to a third person, who received it for
value and transferred it back again to the plaintiff for a valuable
consideration. The action is brought on a note of which the
plaintiff is the payee, and the promise on which recovery is
sought is made directly to the plaintiff himself. The case there-
fore would seem to fall within the ordinary rule by which a note,
as between the original parties to it, is held to be open to all the
equities properly arising thereon.

But were it otherwise, if it were possible to regard the plain-
tiff's present title to the note as having been derived through an
innocent indorsee for value, who had received it before its ma-
turity, and had indorsed it to the plaintiff, the original payee,
for a good consideration, we do not see that the right of the
defendant to make a defence to this note on the ground of the
fraudulent nature of the original consideration of it would be in
any degree affected or impaired. The doctrine of recoupment,
as understood and applied in the modern cases in our courts,
would still be applicable to the case. That doctrine does not
rest on the nature of the right which a plaintiff has in the con-
tract which he seeks to enforce, nor on the fact that his interest
in it is the same at the time of suit brought as when it was
originally entered into. The essential elements on which its
application depends are two only. The first is, that the dam-
ages which the defendant seeks to set off shall have arisen from
the same subject matter, or sprung out of the same contract
or transaction as that on which the plaintiff relies to main
tain his action. The other is, that the claim for damages shall
be against the plaintiff, so that their allowance by way of set-off
or defence to the contract declared on, shall operate to avoid
circuity of action, and as a substitute for a distinct action
against the plaintiff to recover the same damages as those relied

on to defeat the action. *Still* v. *Hall,* 20 Wend. 51. *Batterman* v. *Pierce,* 3 Hill, 171. *Harrington* v. *Stratton,* 22 Pick. 510. The case at bar clearly falls within this rule, and the principles on which it is founded. The claim of the defendant for damages arises directly out of the note in suit, inasmuch as it rests on the invalidity of the consideration for which it was given, and the fraud of the plaintiff in obtaining it. If the defendant should pay the note without insisting on this claim by way of set-off, he would have a good cause of action against the plaintiff to recover the same amount back which he had paid without consideration, and upon false and fraudulent representations. The allowance of the defence prevents a needless circuity of remedy, which the law always seeks to avoid. Thus, a first indorser of a note, to whom it is subsequently reindorsed, cannot maintain an action upon it as indorsee against prior intermediate indorsers, because they in their turn would be entitled to recover back again from the plaintiff the same sum which the latter had received from them. The result of the actions would be to place the parties in the same situation precisely as before any action was brought. *Bishop* v. *Hayward,* 4 T. R. 470. *Britten* v. *Webb,* 2 B. & C. 483 ; S. C. 3 D. & R. 650. So here: if the plaintiff should recover in this action the amount of the note, the defendant in another action would recover the same amount against the plaintiff. No good reason can be given for requiring two actions to be brought in order to accomplish a result which can be as well attained, and at less cost, in one.

It is urged by the counsel for the plaintiff that the defendant would have been compelled to pay the whole amount of the note in suit to the indorsee to whom the plaintiff negotiated it or value before its maturity, and that he could not have set up he ground of defence on which he now relies if an action had been brought upon it by him. This is certainly true; but we do not see that the suggestion has any material bearing on the rights of the parties to this suit. While the notes were in the hands of the indorsee, the defendant still retained his claim for damages against the present plaintiff. The transfer of the note in no way affected or impaired the right of the plaintiff to

recover those damages. It affected only the form of his rem‑ edy, limiting it to a right of action against the plaintiff. But on the redelivery of the note to the plaintiff, and the commencement of an action by him to enforce it, the remedy by recoupment revived.

Nor can we see that it is at all material that the plaintiff, when he took back the note in suit, paid a valuable considera‑ tion for it to the person to whom he had previously negotiated it. The rights of the defendant could not be affected by the dealings of the plaintiff with third parties with whom he had no concern. The plaintiff could not purge the fraud with which the note was tainted so as to get rid of the claim for damages on account thereof, which the defendant had against him. This still remained to be enforced either by a separate action or by recoupment, according as the rules of law might make either form of remedy appropriate and applicable, when the defendant sought to avail himself of it.

The other ground of exception is, that the court erred in ruling that there was no sufficient evidence of a new consideration for the note in suit arising out of the contract entered into in July 1860 for a dissolution of the copartnership previously ex‑ isting between the plaintiff and defendant. But we think there is no foundation in fact for this exception. On looking at the written agreement for such dissolution, which is said to embody the whole transaction, we can find no promise by the defendant to pay this note. The sale of certain interests in patent rights is made conditional on the payment by the defendant of the joint debts of the previous firm, and of the several debts of the sep‑ arate copartners which were due to the plaintiff. But there is no agreement or new promise to pay such individual debts. But even if such new promise was proved, we do not think the plaintiff could avail himself of it to shut the defendant out of his defence to this note. This is not an action brought on such new promise, but on the note itself. No new consideration for the note has ever passed between the parties. It stands on the original consideration. Nor has there been any waiver of or intention to abandon the grounds of defence arising out of the

fraudulent character of such original consideration. No such waiver or abandonment could be inferred from the alleged new promise or agreement to pay the note, because at the time it is said to have been made the defendant was ignorant of the fact that he had been defrauded by the plaintiff in the transaction as part of which the note now in suit was given.

*Exceptions overruled.*